Morris Lapidus Associates, Appellant,
*v.* Airportels, Inc. et al.

Argued December 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*David S. Rasner*, with him *Jerome E. Bogutz*, and *Bogutz & Mazer*, for appellant.

*John R. Padova*, with him *Gerald A. Inglesby*, and *Solo & Padova*, for appellees.

OPINION BY PRICE, J., April 22, 1976:

This case is an appeal from the lower court order striking a judgment obtained by appellant Morris Lapidus Associates against appellees Airportels, Inc. and Philadium Hotel, Inc. The order was improperly granted, and, therefore, it must be reversed.

Appellant, an architectural firm with principal office located in New York, N.Y., contracted to render services in Philadelphia to appellees. The parties became embroiled in a dispute over payment, and, pursuant to provisions of the contract, the dispute was submitted to arbitration in New York, culminating in an award in favor of appellant. That award was confirmed by the Supreme Court of New York, Special Division, and entered as a judgment in that state on September 5,

1974. Appellee appealed the judgment to the Appellate Division, specifically arguing that one of the arbitrators had been biased. That court affirmed the judgment in favor of appellant, dismissing appellees' argument as "sour grapes."[1]

On September 18, 1974, appellant entered the judgment obtained in New York in Philadelphia, pursuant to provisions of the Uniform Enforcement of Foreign Judgments Act.[2] Appellees filed a motion to open the judgment, or, in the alternative, to strike the judgment, again raising the issue of alleged bias on the part of the arbitrators. After considering the depositions submitted by both sides, the lower court issued an order striking the judgment, basing its decision on its belief that the failure of the arbitrators to reveal their relationship to the parties denied the appellees due process of law. On appeal, appellant argues that the lower court's action violates the full faith and credit clause of the Constitution of the United States.

There can be no doubt, of course, that Pennsylvania courts must accord full faith and credit to judgments obtained in New York. U.S. Const. Art. IV, §1; *Milliken v. Meyer*, 311 U.S. 457 (1940), *reh. denied*, 312 U.S. 712 (1941); *Higbee Estate*, 372 Pa. 233, 93 A.2d 467 (1953). Generally, this means that they must be given the same

---

1. The arbitrator, Mr. Irving Stone, was a director of the Knott Hotel chain. In 1972, Knott Hotels wished to obtain a hotel in the Philadelphia Airport area, and Mr. Stone had, at one time, been involved in the unsuccessful attempt by Knott Hotels to acquire Airportels. The extent of Mr. Stone's involvement in the attempted acquisition is not revealed by the record.

After the Appellate Division had rejected appellees' claims for relief, appellees discovered that one of the other arbitrators, Mr. Schneider, was vice-president of a construction corporation which had, in the past, submitted bids on projects under appellant's control. A petition for reconsideration based on this newly discovered evidence was filed in the New York court, but the petition was denied.

2. Act of Dec. 22, 1965, P.L. 1157, §1 (12 P.S. §921) *et seq.* (Supp. 1975-76).

recognition and *res judicata* effect as they would receive in that state's courts. *Barnes v. Buck*, 464 Pa. 357, 346 A.2d 778 (1975).

Appellee raises three separate arguments for the proposition that this New York judgment is not entitled to full faith and credit in Pennsylvania. First, he argues that a judgment obtained in violation of due process is not entitled to full faith and credit. *Griffin v. Griffin*, 327 U.S. 220, *reh. denied*, 328 U.S. 876 (1946). Then, citing *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), *reh. denied*, 393 U.S. 1112 (1969), appellee contends that an award obtained in front of a panel of biased arbitrators is a denial of due process. Thus, because of the allegation that two of the three arbitrators in this case failed to disclose facts which would tend to give the appearance of bias, the judgment was obtained in violation of due process and is not entitled to full faith and credit. We disagree.

It is true that in *Commonwealth Coatings Corp.*, *supra*, the Supreme Court of the United States set aside an arbitration award because one of the arbitrators had failed to disclose the existence of a financial relationship with one of the parties. However, that decision was based, not on due process grounds, but on the United States Arbitration Act, 9 U.S.C. §1 *et seq.* (1970), which provides, in §10, that an award may be vacated "[w]here there was evident partiality or corruption in the arbitrators, or either of them."

Discussing the requirement of an impartial tribunal, the Court stated that:

> "Since in the case of courts this is a *constitutional* principle, we can see no basis for refusing to find the same concept in the broad statutory language that governs arbitration proceedings and provides that an award can be set aside on the basis of 'evident partiality' or the use of 'undue means'." 393 U.S. at 148 (emphasis in original).

Thus, the Court indicated that its decision was based on

the federal statute and not on the Constitution. Similarly, this court has indicated that in a normal arbitration proceeding, the arbitrators must, at least, disclose any relationships with the parties that would possibly indicate bias. *Bole v. Nationwide Insurance Co.*, 238 Pa. Superior Ct. 138, 352 A.2d 472 (1975); *Keystone Insurance Company Appeal*, 224 Pa. Superior Ct. 404, 307 A.2d 55 (1973). If actual bias is evident, the arbitrator must be disqualified.[3] *Bole, supra.* However, these cases were not decided on Constitutional grounds. The decisions were based on statutory or contractual interpretation.

We do not believe that the fact that the arbitrators may have been biased automatically requires a finding that due process has been denied. The manner of selecting arbitrators is contractually determined. If the process is somehow distorted, and an improper arbitrator is appointed, this court has decided that the prejudiced party is entitled to relief. That entitlement can be seen as stemming from the contractual arrangement of the parties, or, it can be seen as mandated by statute. However, contractual arbitration is a voluntary dispute resolution process. Prior to entering the contract, neither party is obligated to submit a dispute to arbitration, as *is* the case with the normal judicial process. Thus, the due process guarantees of the Constitution, although desirable in the eyes of many, are not mandatory in an arbitration proceeding.

Furthermore, even were we to conclude that the appearance of bias in arbitrators is a denial of due process, we could not permit the collateral attack on the judgment attempted by appellees in this case. The cases cited by appellees for the proposition that a judgment obtained in violation of due process is not entitled to full faith and credit are not on point. In those cases, the due

---

3. For a divergent view, see the dissenting opinion in *Bole, supra.*

process denied had the result of depriving the litigant of an opportunity to appear and defend. *See, Griffin v. Griffin*, 327 U.S. 220, *reh. denied*, 328 U.S. 876 (1946); *Hansberry v. Lee*, 311 U.S. 32 (1940); *Wetmore v. Karrick*, 205 U.S. 141 (1907). In contrast, in this case, appellees have already raised in the New York court the same issues which they now raise in Pennsylvania, *i.e.*, the alleged bias of arbitrators. The New York courts heard the issue and decided adversely to appellees. Once a party to a lawsuit has had the opportunity to raise and litigate an issue, he cannot collaterally attack the resulting judgment in a foreign forum. *Durfee v. Duke*, 375 U.S. 106 (1963). Therefore, we conclude that appellees' due process argument is without merit.

Appellees' second argument devolves from an interpretation of Section 2 of the Uniform Enforcement of Foreign Judgments Act (12 P.S. §922). That Section provides, in part, that:

> "A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this State...."

Appellees interpret this section to mean that a foreign judgment cannot be enforced in Pennsylvania if there would have been a valid defense to the action had it been initiated in Pennsylvania. Thus, according to appellees, *every time* enforcement of a foreign judgment is sought under the Uniform Enforcement of Foreign Judgments Act, the courts must reexamine the merits of the case. If the party successful in the foreign jurisdiction wishes to take advantage of full faith and credit, he is relegated to employing the practice used before the Uniform Act simplified the process of transferring judgments: an action in assumpsit. Appellees' contention is simply incorrect.

A logical examination of the text and purpose of the statute would seem to manifest the incorrectness of

appellees' position. What benefit would be derived from enacting a simple procedure for the transfer of judgments, if those judgments inevitably had to be relitigated in the transferee state?

If logic, alone, is not persuasive, further evidence of the erroneousness of appellees' position is forthcoming. The language of 12 P.S. §922 is substantially the same as that of §2 of the proposed Uniform Enforcement of Foreign Judgments Act (Revised 1964), as adopted by the National Conference of Commissioners on Uniform Laws. The 1964 version revised the language, but not the substance, of Section 8 of the 1948 version of that proposed Act. *See* 9A *Uniform Laws Annotated* (1965). Following Section 8, the Commissioners' Note explains the meaning of the section, as follows:

> "Under the full faith and credit clause, there are certain defenses, particularly lack of jurisdiction in the court rendering the judgment, payment of the judgment and fraud or collusion in its procurement, which the judgment debtor may properly raise in a later suit on the judgment. The uniform act is so drafted as to secure a judgment debtor the essentials of due process of law in minimum form, at the same time giving him reasonable opportunity to present every defense which under the law he is entitled to present."

This comment leaves little doubt that judgments transferred under the Uniform Enforcement of Foreign Judgments Act are to be given the same full faith and credit effect as judgments transferred under the former practice. The Act does not entitle a party to raise any and all defenses; he is only entitled to raise defenses which destroy the full faith and credit obligation normally owed to a foreign judgment. In the context of this case, then, appellees are not entitled to raise the biased arbitrator defense because to allow them to do so would violate full faith and credit.

Appellees' third and final argument is that Penn-

sylvania need not accord full faith and credit to the New York judgment because the original cause of action could not have been brought in this state. Appellees contend that the action could not have been brought in Pennsylvania because the architect who rendered the services to appellees was not licensed to practice in Pennsylvania.

It is true that the Supreme Court of the United States has indicated that states are under no obligation to provide forums for all causes of action, and, if a state refuses to allow a particular cause of action to be brought in its courts, then it need not provide a forum for foreign judgments based on that cause of action. *Anglo-American Provision Co. v. Davis Provision Co.,* 191 U.S. 373 (1903). Although the support for *Anglo-American Provision Co.* has been weakened, *see, Kenney v. Supreme Lodge,* 252 U.S. 411 (1920), the status of that principle need not concern us today. There can be no doubt that the courts of this state would have jurisdiction to entertain appellant's claim. Pennsylvania does provide a forum for actions on a contract for services. Therefore, the fact that appellant might not have been successful had he brought the action in Pennsylvania is irrelevant. "[A] judgment obtained in a sister State is ... entitled to full faith and credit in another State, though the underlying claim would not be enforced in the State of the forum." *Morris v. Jones,* 329 U.S. 545, 551 (1947).

The order of the lower court is reversed and the judgment in favor of appellant is reinstated. Judgment to be entered on the docket and to stand as a lien as of September 18, 1974.

CERCONE, J., concurs in the result.

CONCURRING OPINION BY SPAETH, J.:

I agree with the majority that the order striking appellant's judgment must be reversed. However, I cannot agree with the majority's statement that "the due process guarantees of the Constitution, although desirable in the eyes of many, are not mandatory in an arbitration proceeding." (Majority Opinion at p. 84).

First, it is unnecessary to decide that issue here; in my view, we should wait until it is presented by the facts before commenting upon it. As the majority says, the New York courts considered and decided the issue adversely to appellees, and the issue now before us is whether we must accord full faith and credit to that decision.

Second, the statement by the majority that we did not decide *Bole v. Nationwide Insurance Co.*, 238 Pa. Superior Ct. 138, 352 A.2d 472 (1975), on constitutional grounds is not, at least so it seems to me, entirely accurate. In *Bole*, we spoke of the courts' particular responsibility to ensure impartiality and fairness in arbitration proceedings. We said there that because judicial review of a common law arbitration award is extremely limited, courts must be especially careful to make certain that the arbitration is impartial. In enunciating this principle, we relied on *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968), in which Mr. Justice BLACK drew an analogy to the constitutional mandate of fairness and impartiality within the judicial system to find that Section 10 of the United States Arbitration Act, 9 U.S.C. §10 (1970) required an impartial proceeding. Thus, considerations of due process were important both in *Commonwealth Coatings* and in *Bole*.

The majority also says in *dictum* that "the Supreme Court of the United States has indicated that ... if a state refuses to allow a particular cause of action to be brought in its courts, then it need not provide a forum for foreign judgments based on that cause of action." (Majority Opinion at p. 87). However, in *Fauntleroy v. Lum*, 210 U.S. 230 (1908), Mr. Justice HOLMES, speaking for the Court, stated that "the illegality of the original cause of action in Mississippi [could not] be relied upon there as a ground for denying a recovery upon a judgment of another State." *Id.* at 236. In any

event, as the majority says, the issue is not relevant, as appellant's cause of action would have been heard in our courts.

HOFFMAN, J., joins in this opinion.