MARWORTH, INC., Petitioner,

v.

Eugene F. McGUIRE and Gary T. Cornwell, Respondents.

No. 90SC80.

Supreme Court of Colorado,
En Banc.

May 6, 1991.

Jorge E. Castillo, P.C., Jorge E. Castillo, Denver, for petitioner.

Vanatta, Sullan and Sandgrund, P.C., Scott F. Sullan, Ronald M. Sandgrund, Englewood, for respondents.

Justice VOLLACK delivered the Opinion of the Court.

Marworth, Inc. (Marworth), petitions this court for a review of the court of appeals' reversal of the trial court's ruling that full faith and credit principles prevented an inquiry into the merits of the Texas judgment. *Marworth, Inc. v. McGuire*, 787 P.2d 200 (Colo.App.1989). We reverse.

## I.

In January 1983, McGuire, Kearns & Cornwell (MK & C) entered into an oral agreement with the Texas law firm of Farnsworth & Martin (F & M). The agreement provided that F & M would provide its expertise in tax and mineral law to MK & C's clients and in exchange MK & C would pay F & M a percentage of the fees. The firms collaborated on a number of cases until disputes arose concerning the payment of fees. F & M claimed that MK & C had guaranteed payment of its fees. MK & C responded that it was obligated to pay F & M's fees only when payment had been made to MK & C by the common client. F & M assigned its claims against MK & C to Marworth.

Marworth filed suit in Texas against MK & C and the individual partners to recover payment for services rendered to MK & C's clients. The defendants in the Texas case were MK & C's partners as individuals and the partnership. The partnership and the individual partners filed a general denial to the complaint. The individual partners did not deny that a valid partnership existed. A jury trial was held in the Texas district court on February 3 and 4, 1986. Prior to the close of Marworth's case-in-chief, the following discussion was held between counsel and the court pertaining to the liability of the individual partners:

THE COURT: Okay. You can bind the other members of the partnership. There's not any question about that. What he's saying is you can't bind the other members of the partnership individually in individual liability, unless you're going to have direct testimony from each one of them, you've got some kind of statements from them that they are going to be liable.

MR. NEVARES: I see what you're saying, Your Honor.

The COURT: You know, one partner can bind the partnership. He can't bind them individually for their individual liability.

As a result of this discussion, Marworth stipulated that "it will agree to only make liable the individual of Gregory Kearns and the partnership of McGuire, Kearns and Cornwell." Immediately after the colloquy pertaining to the liability of the individual partners, Cornwell testified that his understanding of the agreement between the firms was that MK & C was not obligated to pay F & M until MK & C was paid by the common client. McGuire did not appear or testify at the trial because of a schedule conflict. Kearns was present at the trial, but elected not to testify. At the close of all the evidence, the court dis-

missed Kearns from the lawsuit. The case was submitted to the jury solely with respect to the issue of the liability of the partnership. The jury found that the parties had entered into an express oral contract; that the agreement made MK & C responsible for the services provided; and that the agreement obligated MK & C to pay for F & M's services notwithstanding the fact that funds had not been received by MK & C from its clients. Marworth proposed a judgment imposing liability on the partnership and each partner individually. The court rejected this proposal and entered a judgment imposing liability on the partnership only.

Marworth appealed to the Texas Court of Appeals, requesting that the judgment be modified to impose joint and several liability on the individual partners. Kearns, McGuire and Cornwell participated in the appeal. The Texas Court of Appeals examined the stipulation and concluded that it involved a question of law and was not binding on the court. The court held that the existence of the partnership was deemed admitted and applied the Texas Uniform Partnership Act[1] which states that "all partners are liable jointly and severally for all debts and obligations of the partnership." On this basis, the court modified the judgment to include McGuire, Kearns, and Cornwell, jointly and severally. A motion for rehearing was filed in the Texas Court of Appeals by MK & C and the partners individually. The petition for rehearing failed to raise any issues concerning respondents' alleged deprivation of due process. The court denied the motion for rehearing. Respondents then petitioned the Texas Supreme Court for a writ of error. Respondents claimed that the court of appeals erred in not enforcing the stipulation, but again did not raise any issues concerning the alleged violation of their due process rights. The Texas Supreme Court refused the writ of error on June 3, 1987. A motion for rehearing was denied on November 10, 1987.

On February 8, 1988, Marworth filed an authenticated copy of the Texas judgment in the Denver District Court pursuant to the Colorado Uniform Enforcement of Foreign Judgments Act (UEFJA).[2] McGuire and Cornwell filed a motion to dismiss the petition to domesticate the foreign judgment and a motion for leave to set an evidentiary hearing and oral argument. The court held a hearing on the motion to dismiss, and denied the motion to set an evidentiary hearing. Oral argument on the motion to dismiss was held on June 7, 1988. In support of their motion, McGuire and Cornwell argued that the Texas judgment had been obtained through perjury and a violation of their due process rights. The trial court denied the motion to dismiss on the basis that it did not have the power to inquire into the merits of the judgment because of the full faith and credit clause. McGuire and Cornwell appealed the trial court's decision to the Colorado Court of Appeals.

The Colorado Court of Appeals reversed and remanded the trial court's ruling for further findings. The court of appeals directed the trial court to determine whether McGuire and Cornwell waived their argument alleging a violation of their due process rights and whether McGuire and Cornwell should be granted relief from judgment pursuant to C.R.C.P. 60.

## II.

We begin our discussion with a review of the full faith and credit clause.

■ Under article IV, section 1, of the United States Constitution, the final judgments and public acts of one state must be given full faith and credit in every other state. *Tucker v. Vista Fin. Corp.*, 192 Colo. 440, 442, 560 P.2d 453, 455 (1977); *Hansen v. Pingenot*, 739 P.2d 911, 912 (Colo.App.1987); *see also Underwriter's Nat'l Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n*, 455 U.S. 691, 704, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558 (1982); *Durfee v.*

---

1. Tex.Rev.Civ.Stat.Ann., art. 6132b, § 15 (Vernon 1970).

2. Sections 13–53–101 to –108, 6A C.R.S. (1987).

*Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). The United States Supreme Court has held that full faith and credit "generally requires every State to give a judgment at least the res judicata effect which the judgment would be accorded in the State which rendered it." *Durfee,* 375 U.S. at 109, 84 S.Ct. at 244; *see also Morris v. Jones,* 329 U.S. 545, 553, 67 S.Ct. 451, 457, 91 L.Ed. 488 (1946). A foreign judgment will be enforced to its full extent regardless of any errors or irregularities it may contain. *Thorley v. Superior Court, County of San Diego,* 78 Cal.App.3d 900, 910, 144 Cal.Rptr. 557, 563 (1978); *Matson v. Matson,* 333 N.W.2d 862, 868 (Minn.1983); *Wooster v. Wooster,* 399 N.W.2d 330, 334 (S.D.1987); *Data Management Sys., Inc. v. EDP Corp.,* 709 P.2d 377, 379 (Utah 1985).

■ The full faith and credit clause generally protects the judgment of a court of a sister state against collateral attacks, unless proper grounds for the collateral attack can be established. *See Data Management Sys.,* 709 P.2d at 379. The proper grounds for collaterally attacking a foreign judgment are limited to "lack of personal or subject matter jurisdiction of the rendering court, fraud in the procurement of the judgment, satisfaction, lack of due process, or other grounds that make the judgment invalid or unenforceable." *Wooster,* 399 N.W.2d at 333 (quoting *Baldwin v. Heinold Commodities, Inc.,* 363 N.W.2d 191, 194 (S.D.1985)); *see Rosenstein v. Steele,* 103 Nev. 571, 747 P.2d 230, 232 (1987). The nature and amount or other aspects of the merits of a foreign judgment cannot be relitigated in the state in which enforcement is sought. *Hansen,* 739 P.2d at 913; *see Thompson v. Safeway Enter., Inc.,* 67 Ill.App.3d 914, 916, 24 Ill. Dec. 561, 564, 385 N.E.2d 702, 705 (1978); *Gibson v. Epps,* 352 S.W.2d 45, 47 (Mo.Ct. App.1961); *Matson,* 333 N.W.2d at 867; *Morris Lapidus Assoc. v. Airportels, Inc.,* 240 Pa.Super. 80, 84, 361 A.2d 660, 663 (1976); *Wooster,* 399 N.W.2d at 333; *Copeland Planned Futures, Inc. v. Obenchain,* 9 Wash.App. 32, 36, 510 P.2d 654, 659 (1973). Procedures for granting relief from foreign judgments are available to the extent permitted by the full faith and credit clause. *See Data Management Sys.,* 709 P.2d at 381. This principle limits the relief available from foreign judgments under C.R.C.P. 60(b) to the following reasons: (1) the judgment is based upon fraud (extrinsic); (2) the judgment is void; or (3) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

### III.

Respondents raise two separate arguments against enforcing the Texas judgment in Colorado. First, respondents argue that Colorado's version of the Uniform Enforcement of Foreign Judgments Act allows them to raise C.R.C.P. 60(b) defenses. Second, respondents claim that the Texas judgment was entered against them in violation of their procedural due process rights.

### A.

■ Respondents claim that Colorado's UEFJA allows Colorado courts to reopen, vacate, or set aside foreign judgments based on C.R.C.P. 60(b). Section 13–53–103, 6A C.R.S. (1987), of the Colorado version of the UEFJA provides:

A copy of any foreign judgment authenticated in accordance with the act of congress or the laws of this state may be filed in the office of the clerk of any court of this state which would have had jurisdiction over the original action had it been commenced first in this state. *A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the court of this [sic] state in which filed and may be enforced or satisfied in like manner.*

(Emphasis added). Respondents argue that the emphasized language allows Colorado courts to apply C.R.C.P. 60(b) to for-

eign judgments in the same manner as the rule is applied to domestic judgments.

States adopting the UEFJA are bound to follow constitutional mandates. The United States Supreme Court has held that the "power of a state to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard in them is, of course, subject to the restrictions imposed by the Federal Constitution." *Angel v. Bullington,* 330 U.S. 183, 188, 67 S.Ct. 657, 660, 91 L.Ed. 832 (1947) (quoting *McKnett v. St. Louis & San Francisco R.R.,* 292 U.S. 230, 233, 54 S.Ct. 690, 691, 78 L.Ed. 1227 (1934)); *see also Morris v. Jones,* 329 U.S. 545, 551–52, 67 S.Ct. 451, 455–56, 91 L.Ed. 488 (1946).

Most states have interpreted these restrictions to mean that the UEFJA may not create defenses to a foreign judgment that violate the full faith and credit clause. In *Data Management Sys., Inc. v. EDP Corp.,* 709 P.2d 377 (Utah 1985), the Utah Supreme Court rejected EDP's argument that under Utah's UEFJA, Utah courts may reexamine the merits of the case to determine whether to give full faith and credit to the foreign judgment. The court held:

> EDP's interpretation of our Foreign Judgments Act is contrary to the purpose and intent of the Uniform Act and the Full Faith and Credit Clause. Furthermore, this theory is unsupported by any authority. Neither Rule 60(b) nor [the Act] should be interpreted in a manner which defeats the Full Faith and Credit Clause.

*Id.* at 381. A similar line of reasoning was applied by the Nevada Supreme Court in *Rosenstein v. Steele,* 103 Nev. 571, 747 P.2d 230 (1987), where the court stated that "the defenses preserved by Nevada's Uniform Enforcement of Foreign Judgments Act and available under NRCP 60(b) are limited to those defenses that a judgment debtor may constitutionally raise under the full faith and credit clause and which are directed to the validity of the foreign judgment." *Id.* at 232. This position has been adopted by a number of jurisdictions. *See Salmeri v. Salmeri,* 554 P.2d 1244, 1248 (Wyo.1976); *Matson v. Matson,* 333 N.W.2d 862, 867 (Minn.1983); *Morris Lapidus Assoc. v. Airportels, Inc.,* 240 Pa.Super. 80, 85, 361 A.2d 660, 664 (1976); *Wooster v. Wooster,* 399 N.W.2d 330, 333 (S.D.1987).

Respondents' interpretation of Colorado's version of the UEFJA to allow Colorado courts to reexamine the merits of foreign judgments is "contrary to the purpose and intent of the Uniform Act and the Full Faith and Credit Clause." *Data Management Sys.,* 709 P.2d at 381. The UEFJA is intended to implement the full faith and credit clause and to provide a summary procedure for enforcing foreign judgments. The UEFJA cannot "create substantive rights in a judgment debtor which conflict with the Full Faith and Credit Clause." *Id.* Our courts may consider C.R.C.P. 60(b) motions for relief from a foreign judgment only to the extent permitted by the full faith and credit clause. Respondents' Rule 60(b) motion is based on their allegation that the Texas judgment was obtained fraudulently. Fraud is usually separated into two categories—extrinsic, which denies a litigant the opportunity to fully litigate his or her rights or defenses upon trial; and intrinsic, which are fraudulent acts pertaining to an issue in the original action or are acts that were, or could have been, litigated in the original action. *Montgomery v. Kennedy,* 669 S.W.2d 309, 312 (Tex.1984). The respondents challenge the validity of the Texas judgment on the grounds that it was obtained as a result of allegedly perjured testimony. Respondents did not raise the issue of perjury during the trial or appellate proceedings in the Texas courts. The allegedly perjured testimony complained of here is intrinsic and is not a basis for a collateral attack on a foreign judgment under Colorado law. *See* § 13–53–103; *see also Wooster,* 399 N.W.2d at 333.

### B.

■ Respondents' second contention is that the Texas Court of Appeals modified the judgment to include McGuire and Cornwell individually, in violation of their due

process rights. Respondents claim that the modified judgment was entered against them without allowing them to present a defense. They argue that this is a due process violation which establishes a basis for collaterally attacking the Texas judgment in the Colorado courts.

Respondents' assertion that they were deprived of due process must be evaluated from the standpoint of Texas law. *U.S. Fidelity & Guaranty Co. v. Richey*, 18 S.W.2d 231, 234 (Tex.Civ.App.1929) (validity and finality of a foreign judgment are ordinarily determined by the law of the jurisdiction where the judgment was rendered). Under Texas law, if suit is brought against several partners who are jointly indebted under a contract, the court may render a personal judgment against all of the partners who were actually served.[3] *See Intercity Investments Co. v. Plowman*, 542 S.W.2d 260, 263 (Tex.Civ.App. 1976). The court may enter a personal judgment against a partner who was actually served because the Texas Uniform Partnership Act[4] provides that "all partners are liable jointly and severally for all debts and obligations of the partnership." *See Keeling v. Rigsby*, 407 S.W.2d 355, 357 (Tex.Civ.App.1966). In *Bentley Village, Ltd. v. Nasits Building Co.*, 736 S.W.2d 919 (Tex.Ct.App.1987), the court addressed a contention similar to the one made here by respondents. In rejecting that contention, the *Bentley Village* court stated:

> Service on one member of a partnership brings the firm before the court, and a judgment thereon is binding on the partnership and the member [partner] served. *Hedges v. Armistead*, 60 Tex. 276; *Alexander v. Stern*, 41 Tex. 193; *Witchita County Lumber Co. v. Maer*, (Tex.Civ.App.), 235 S.W. 990. But in the instant case the defendants Gallaher and Arnold [partners not served with citation] both appeared in court and filed their written answer. Thus the trial court had jurisdiction over their persons, and could ... render judgment against each of them individually.

*Id.* at 923 (quoting *Graham Hotel Corp. v. Leader*, 241 S.W. 700, 701 (Tex.Civ.App. 1922)).

Applying these principles to this case, we conclude that McGuire and Cornwell were not denied their due process rights. McGuire and Cornwell were served individually and as partners in accordance with Texas law. The Texas Court of Appeals found that respondents answered with a general denial. The general denial did not contain a sworn denial of partnership; therefore, the existence of the MK & C partnership stood admitted as alleged. *Keeling*, 407 S.W.2d at 356. McGuire and Cornwell's failure to deny partnership status made them jointly and severally liable for the debts of the partnership. *Id.* at 357; *Bentley Village*, 736 S.W.2d at 923. The Texas Court of Appeals also found that Marworth's stipulation to hold liable only Kearns individually and the MK & C partnership did not bind the court or the parties and could not act as a waiver of Marworth's right to hold each partner individually liable. The court then modified the judgment according to Texas law to include McGuire and Cornwell individually based on the jury's verdict finding the partnership liable. The court's modification of the judgment did not change the respondents' liability since they were already liable for the partnership debts as a matter of law. Moreover, the modification did not violate respondents' due process rights because they were given the chance to fully litigate this case in the Texas court. Respondents filed an answer, appeared in court, gave testimony, and had the opportunity to present witnesses and evidence in their behalf. Respondents also participated in the appellate process. Based on these facts, we hold that respondents were given notice and an opportunity to be heard in accordance with the requirements of the due process clause. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).

3. Tex.Civ.Prac. & Rem.Code Ann. § 31.003 (Vernon 1986).

4. Tex.Rev.Civ.Stat.Ann., art. 6132b, § 15 (Vernon 1970).

The judgment of the court of appeals is reversed.