J.A13031/14

2014 PA Super 179

| STANDARD CHARTERED BANK, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AHMAD HAMAD AL GOSAIBI AND | : | |
| BROTHERS COMPANY, ET AL., | : | |
| | : | |
| Appellants | : | No. 2406 EDA 2013 |

Appeal from the Order Entered July 16, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division No(s).: 130301427

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                **FILED AUGUST 20, 2014**

Ahmad Hamad Al Gosaibi and Brothers Co., *et al.* ("AHAB") appeals from the order entered in the Philadelphia County Court of Common Pleas denying its motion to vacate judgment in favor of Standard Chartered Bank ("Standard Chartered"). On appeal, AHAB challenges the Pennsylvania trial court's decision to give full faith and credit to a New York judgment recognizing a Bahraini money judgment in favor of Standard Chartered. We hold that the New York court's decision to recognize the foreign nation judgment is entitled to full faith and credit in Pennsylvania. Accordingly,

---

[*] Former Justice specially assigned to the Superior Court.

because Standard Chartered sought to enforce a valid New York judgment in Pennsylvania, we affirm.

Standard Chartered is a banking corporation organized under the laws of England and Wales with a New York branch. AHAB is a Saudi Arabian partnership whose partners are all citizens and residents of Saudi Arabia. In April 2009, the parties entered into a currency exchange agreement wherein Standard Chartered agreed to sell Saudi Riyals to AHAB in exchange for United States Dollars. Standard Chartered transferred the Riyals to AHAB's account, but AHAB did not transfer the corresponding Dollars to Standard Chartered's account. In December 2010, Standard Chartered obtained a twenty-five million dollar money judgment, plus interests and costs, against AHAB in the Bahrain Chamber for Dispute Resolution, a commercial court of the Kingdom of Bahrain.[1] AHAB did not exercise its right to appeal from the Bahraini judgment in favor of Standard Chartered.

In December 2011, Standard Chartered commenced an action against AHAB in the Supreme Court[2] of the State of New York, New York County, to gain recognition of the Bahraini judgment under New York's implementation

---

[1] For additional background, *see **Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.**, 785 F. Supp. 2d 434 (S.D.N.Y 2011), and **In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp LLC**, No. 14 Civ. 1801, 2014 WL 3404955, 2014 U.S. Dist. LEXIS 95578 (S.D.N.Y. July 9, 2014).

[2] In New York, the Supreme Court is the trial court of general jurisdiction, analogous to Pennsylvania's Court of Common Pleas.

of the Uniform Foreign Money Judgment Recognition Act[3] ("Recognition Act"). AHAB moved to dismiss the complaint and Standard Chartered cross-moved for summary judgment. Before the New York court, AHAB argued that the trial court should refuse to recognize the Bahraini judgment, pursuant to New York's version of the Recognition Act, because AHAB was denied fundamental due process in the Bahraini tribunal and because Bahrain was an inconvenient forum. On December 12, 2012, after a full hearing and briefing, the New York court granted summary judgment in favor of Standard Chartered. On January 28, 2013, judgment was entered in favor of Standard Chartered in the amount of $27,207,400[4] against AHAB.[5, 6]

---

[3] **See** N.Y. C.P.L.R. 5301-09 (McKinney 2014) (Uniform Recognition of Foreign Country Money Judgments Act).

[4] This amount reflects the twenty-five million dollar judgment in favor of Standard Chartered, plus interest, costs, and disbursements, as calculated by the New York court.

[5] **See Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.**, 38 Misc. 3d 831, 957 N.Y.S.2d 602 (N.Y. Sup. Ct. 2012).

[6] On September 24, 2013, the New York court issued an order quashing Standard Chartered's subpoenas *duces tecum* and information subpoenas based upon a finding that it lacked personal jurisdiction over AHAB pursuant to New York's long-arm statute, N.Y. C.P.L.R. 302 (McKinney 2014). However, the New York court did not disturb its December 12, 2012 order recognizing the Bahraini judgment.

AHAB appealed as of right to New York's intermediate appellate court, which unanimously affirmed the trial court on October 24, 2013.[7]  On April 22, 2014, the intermediate appellate court denied AHAB's petition for leave to appeal to the New York Court of Appeals, New York's highest court.[8]

Meanwhile, on March 11, 2013, Standard Chartered filed the New York judgment in the Philadelphia County Court of Common Pleas pursuant to the Uniform Enforcement of Foreign Judgments Act[9] ("Enforcement Act").[10]  On April 19, 2013, AHAB filed a motion to vacate the judgment.  On May 13, 2013, Standard Chartered filed an answer to the motion to vacate.  After further briefing by both parties and a full hearing on the matter, the trial

---

[7] *See Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 110 A.D.3d 578, 973 N.Y.S.2d 197 (N.Y. App. Div. 2013), *pet. for leave to appeal denied*, No. 10869, 653506/11 (N.Y. App. Div. Apr. 22, 2014).

[8] *See Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, No. 10869, 653506/11 (N.Y. App. Div. Apr. 22, 2014).  This case has been designated as "disposed" and the parties are pursuing post-judgment discovery.

[9] 42 Pa.C.S. § 4306.

[10] In February 2013, Standard Chartered also filed for enforcement of the New York judgment in the trial court of Washington, D.C. pursuant to Washington's version of the Enforcement Act.  *See* D.C. Code § 15-352 (2014).  AHAB moved to set aside that judgment, arguing that the District of Columbia court could not register the Bahraini judgment unless it determined that the award satisfied the District's version of the Recognition Act.  The District of Columbia court disagreed, reasoning that full faith and credit principles permitted enforcement of Standard Chartered's valid New York judgment.  *See Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, No. 2013 CA 001602F (D.C. Super. Ct. May 22, 2013).  AHAB's appeal to the District of Columbia's Court of Appeals was listed for oral argument on April 10, 2014.  Its disposition is pending.

court denied AHAB's motion to vacate the New York judgment on July 16, 2013, concluding

> [h]ere, the mandates of the United States Constitution, federal law, and Pennsylvania's [Enforcement Act] are clear. The New York judgment is entitled to full faith and credit just as any other judgment issued by a New York court. [AHAB] had a full and fair opportunity to litigate whether the Bahraini judgment should be entered pursuant to New York's version of the [Recognition Act]. [Standard Chartered] duly filed the New York judgment in Pennsylvania pursuant to 42 Pa.C.S. § 4306. Therefore, the New York judgment is entitled to the same *res judicata* effect it would have in New York. Therefore, it is of no moment whether Pennsylvania would have recognized the Bahraini judgment under [Pennsylvania's Recognition Act] because here, [Standard Chartered] is seeking to enforce a New York judgment, not a direct Bahraini judgment.

Trial Ct. Op., 10/9/13, at 8 (some capitalization omitted). This timely appeal followed.[11]

AHAB raises the following issues on appeal:

> Did the trial court err, when by order docketed on July 16, 2013, it denied [AHAB's] petition to vacate foreign judgment?

> Did the trial court err in denying the petition because, as a matter of sound public policy and of law, full faith and credit does not preclude a state from applying its own statutory law and policies to the question of recognition of a foreign country judgment simply because a party has chosen to obtain recognition of that judgment in another state first, as a different rule would promote forum-shopping and undermine important interests of states in applying their own recognition standards and policies to foreign country judgments?

---

[11] Both AHAB and the trial court have complied with Pa.R.A.P. 1925.

> To the extent its denial of said petition was based on a conclusion that full faith and credit principles mandated recognition of the Bahraini judgment (since New York previously recognized the judgment as enforceable in that state), did the trial court err in rejecting or failing to consider [AHAB's] arguments that the trial court was not required to give full faith and credit to the New York decision, and was not precluded from applying Pennsylvania's own standards and procedures to the issues of recognition and enforcement of the underlying Bahraini judgment?
>
> Did the trial court err in permitting [Standard Chartered] to use the automatic filing procedures of Pennsylvania's version of the [Enforcement Act] improperly to obtain recognition in Pennsylvania of a Bahraini judgment, which the trial court should have subjected to more searching judicial scrutiny under a separate statute, Pennsylvania's version of the [Recognition Act]?

AHAB's Brief at 3-4 (capitalization omitted).

AHAB's overarching argument on appeal is that the trial court erred in affording full faith and credit to the New York judgment in favor of Standard Chartered. *Id.* at 18. In support of this argument, AHAB makes two primary claims. First, AHAB opines the New York judgment is not entitled to full faith and credit pursuant to this Commonwealth's Enforcement Act. *Id.* at 20. Next, AHAB hypothesizes that even if the judgment is entitled to full faith and credit, Pennsylvania may abrogate the full faith and credit mandate by subjecting Standard Chartered's judgment to heightened scrutiny under the Recognition Act in order to ascertain whether recognition of the judgment comports with Pennsylvania's public policy. *Id.* at 20, 22-27, 31-33. Simply, AHAB insists a Pennsylvania court can ignore full faith and

credit by invoking the specter of "public policy." We hold AHAB is not entitled to relief.

We review the denial of a petition to vacate a foreign judgment for an abuse of discretion or error of law. *Olympus Corp. v. Canady*, 962 A.2d 671, 673-74 (Pa. Super. 2008). The trial court's application of a statute raises a question of law. *Id.* "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *Id.* (citation omitted).

When interpreting statutes, this Court is guided by the following principles:

> The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

*Id.* at 674 (citation omitted).

The United States Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. Congress codified the full faith and credit clause by enacting the Full Faith and Credit Act, 28 U.S.C. §

1738 (2014) (enacted June 25, 1948), which provides that judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.

As explained by the United States Supreme Court,

> [t]he very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.

*Milwaukee Cnty. v. M.E. White Co.*, 296 U.S. 268, 276-77, 56 S. Ct. 229, 234, 80 L. Ed. 220, 228 (1935). Thus, the Full Faith and Credit Act mandates that "all courts . . . treat a state court judgment with the same respect that it would receive in the courts of the rendering state."

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373, 116 S. Ct. 873, 877, 134 L. Ed. 2d 6, 17 (1996).

> Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force. . . .
>
> We are aware of [no] considerations of local policy or law which could rightly be deemed to impair the force and

effect which the full faith and credit clause and the Act of Congress require to be given to [a money] judgment outside the state of its rendition.

**Baker ex rel. Thomas v. Gen. Motors Corp.**, 522 U.S. 222, 233-34, 118 S. Ct. 657, 663-64, 139 L. Ed. 2d 580, 592-93 (1998) (alterations in original) (footnote, citations, and internal quotation marks omitted). Therefore, Pennsylvania gives a judgment "the same *res judicata* effect the judgment would have been afforded in the state in which it was rendered." **Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.**, 587 Pa. 590, 607, 902 A.2d 366, 376 (2006) (citations omitted) (holding judgment approving settlement of New York class action had *res judicata* effect and was entitled to full faith and credit); **see also Morris Lapidus Assocs. v. Airportels, Inc.**, 240 Pa. Super. 80, 82, 361 A.2d 660, 662 (1976) (concluding "[t]here can be no doubt . . . that Pennsylvania courts must accord full faith and credit to judgments obtained in New York.").[12]  Once a judgment is afforded full faith and credit, "relitigation in other states of adjudicated issues . . ." is barred.  **Sutton v. Lieb**, 342 U.S. 402, 407, 72 S. Ct. 398, 402, 96 L. Ed. 448, 455 (1952).

Full faith and credit is statutorily enshrined in Pennsylvania's Enforcement Act, which states:

---

[12] We acknowledge **Morris Lapidus** predates Pennsylvania's enactment of the Enforcement Act.

**(b) Filing and status of foreign judgments.**—A copy of any foreign judgment including the docket entries incidental thereto authenticated in accordance with act of Congress or this title may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

\* \* \*

**(f) Definition.**—As used in this section "foreign judgment" means any judgment, decree, or order of a court of the United States or of any other court requiring the payment of money which is entitled to **full faith and credit** in this Commonwealth.

42 Pa.C.S. § 4306(b), (f) (emphasis added).

"The Full Faith and Credit Clause of the United States Constitution . . . does not extend to judgments of foreign nations." **Hilkmann v. Hilkmann**, 579 Pa. 563, 573, 858 A.2d 58, 65 (2004). In **Noetzel v. Glasgow, Inc.**, 338 Pa. Super. 458, 487 A.2d 1372 (1985), the Superior Court examined the effect of the full faith and credit clause of the Constitution of the United States on foreign judgments. The **Noetzel** Court considered a petition to strike or open a West Virginia judgment transferred to the Montgomery County Court of Common Pleas pursuant to the Enforcement Act. **Id.** at 463, 487 A.2d at 1374. After review, this Court held that judgments entered in sister states are

> entitled to full faith and credit in Pennsylvania so long as there was jurisdiction by the court which originally awarded the judgment, and the defendant had an opportunity to appear and defend. The courts in Pennsylvania will refuse to give full faith and credit to a foreign judgment if it was obtained in derogation of a basic, due process right of the defendant. However, when the court of another state has purported to act on the merits of a case, its jurisdiction to do so and the regularity of its proceedings are presumptively valid. The party challenging the validity of the judgment, therefore, bears the burden of showing any irregularity in the proceedings.

*Id.* at 465-66, 487 A.2d at 1375-76 (citations omitted).

Generally, Pennsylvania enforces a valid sister-state judgment transferred to Pennsylvania even if the judgment violates Pennsylvania public policy. ***Greate Bay Hotel & Casino, Inc. v. Saltzman***, 415 Pa. Super. 408, 414, 609 A.2d 817, 820 (1992) [hereinafter ***Greate Bay***]. In ***Greate Bay***, the plaintiff commenced an action against the defendant in New Jersey to recover unpaid gambling debts. *Id.* at 410, 609 A.2d at 818. The defendant failed to appear to defend against the action and a default judgment was entered against him. *Id.* The plaintiff then filed the New Jersey judgment in the Philadelphia County Court of Common Pleas pursuant to the Enforcement Act. *Id.* In Pennsylvania, the defendant filed a petition to open the judgment alleging that he had not received notice of the default judgment and that "the judgment was unenforceable because gambling debts were violative of public policy and not recoverable in Pennsylvania

under 73 [P.S.] § 2031."[13]  *Id.*  The **Greate Bay** Court held that the

defendant's argument lacked merit:

> [a] state is required to give full faith and credit to a money judgment rendered in a civil suit by a sister state even where the judgment violates the policy or law of the forum where enforcement is sought.  If the judgment was valid and enforceable in the rendering state, it is equally so in all other states.  Thus, a transferred judgment cannot be stricken or opened simply because the party seeking to open or strike can demonstrate that he/she would have a valid defense to the action if brought in Pennsylvania.

*Id.* at 414, 609 A.2d at 820 (citations and formatting omitted).  To reiterate,

the Enforcement Act addresses valid sister-state judgments only.  *Id.*; **see**

**also Hilkmann**, 579 Pa. at 573, 858 A.2d at 65 (holding Enforcement Act's

reference to "full faith and credit" necessarily excludes judgments entered in

the courts of foreign nations).

---

[13] The statute states:

**§ 2031 Gaming contracts to be void.**

If any person or persons shall lose any money or other valuable thing, at or upon any match of cock-fighting, bullet-playing or horseracing, or at or upon any game of address, game of hazard, play or game whatsoever, the person or persons who shall lose their money or other valuable thing shall not be compelled to pay or make good the same; and every contract, note, bill, bond, judgment, mortgage, or other security or conveyance whatsoever, given, granted, drawn or  entered into for the security or satisfaction of the same, or any part  thereof,  shall  be utterly void and of none effect.

73 P.S. § 2031.

Recognition of judgments entered in foreign nations is governed by Pennsylvania's Recognition Act. The Recognition Act defines a foreign judgment as "[a]ny governmental unit **other than the United States, or any state** . . . **thereof** . . . ." 42 P.S. § 22002 (emphasis added). A foreign judgment is "[a]ny judgment of a foreign government granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment in matrimonial or family matters." **Id.** A foreign judgment meeting the requirements of the Recognition Act is "enforceable in the same manner as the judgment of another state which is entitled to full faith and credit." 42 P.S. § 22003. Thus, once a foreign nation judgment is recognized in Pennsylvania under Pennsylvania's Recognition Act, it is entitled to full faith and credit by our sister states.

As discussed *supra*, AHAB argues that Pennsylvania erred in giving full faith and credit to a New York judgment recognizing a Bahraini judgment. Despite AHAB's efforts in New York, the recognition of the judgment in favor of Standard Chartered has passed appellate scrutiny in that state.[14] **See Standard Chartered Bank**, No. 10869, 653506/11 (N.Y. App. Div. Apr. 22, 2014). Furthermore, the court in Washington, D.C., has also permitted

---

[14] We reiterate that the Supreme Court of New York's September 24, 2013 order quashing Standard Chartered's subpoenas *duces tecum* and information subpoenas based upon a finding that it lacked personal jurisdiction did not disturb its December 12, 2012 order recognizing the Bahraini judgment.

enforcement of the New York judgment. *See Standard Chartered Bank*, No. 2013 CA 001602F (D.C. Super. Ct. May 22, 2013). Therefore, just like in *Greate Bay* and *Noetzel*, in which the plaintiffs possessed valid and enforceable sister-state judgments, in the instant case, Standard Chartered possesses a valid New York judgment. *See Greate Bay*, 415 Pa. Super. at 414, 609 A.2d at 820; *Noetzel*, 338 Pa. Super. at 465-66, 487 A.2d at 1375-76. Pursuant to the U.S. Constitution, the Full Faith and Credit Act, and the Enforcement Act, Standard Chartered's New York judgment is, as a matter of law, entitled to full faith and credit in Pennsylvania as with any other judgment issued by a New York court.[15] *See* U.S. Const. art. IV, § 1; 28 U.S.C. § 1738; *Baker*, 522 U.S. at 233-34, 118 S. Ct. at 663-64, 139 L. Ed. 2d at 592-93; *Wilkes*, 587 Pa. at 607, 902 A.2d at 376; *Greate Bay*, 415 Pa. Super. at 414, 609 A.2d at 820; *Noetzel*, 338 Pa. Super. at 465-66, 487 A.2d at 1375-76. That the New York judgment recognized a foreign nation judgment is of no moment. Just as Pennsylvania courts were compelled to recognize a New Jersey judgment in *Greate Bay* and a West Virginia judgment in *Noetzel* pursuant to full faith and credit, we are similarly bound to recognize the instant New York judgment. *See Greate Bay*, 415 Pa. Super. at 414, 609 A.2d at 820; *Noetzel*, 338 Pa. Super. at

---

[15] To the extent AHAB has argued that the language of the Full Faith and Credit Act, the Enforcement Act, and the Recognition Act is ambiguous, we discern no ambiguity. Accordingly, we give effect to the plain language of the statutes. *Olympus*, 962 A.2d at 673-74.

465-66, 487 A.2d at 1375-76. Accordingly, the trial court did not err in giving full faith and credit to the New York judgment and denying AHAB's plea to disregard full faith and credit and vacate the Pennsylvania judgment. *See, e.g.*, *Baker*, 522 U.S. at 233-34, 118 S. Ct. at 663-64, 139 L. Ed. 2d at 592-93.

AHAB alternatively claims that it is against public policy to permit Pennsylvania courts to enforce a sister-state judgment using the mechanical filing principles of Pennsylvania's Enforcement Act. Specifically, because the New York judgment recognized a foreign country judgment pursuant to New York's Recognition Act, AHAB opines Pennsylvania is required to look outside the plain statutory language of the Enforcement Act and examine Pennsylvania's public policy interests. AHAB speculates generally that allowing parties to use Pennsylvania's mechanical filing principles could promote forum-shopping and undermine Pennsylvania's interests in applying its own recognition standards. AHAB's Brief at 24, 32. We hold AHAB is due no relief.

In support of this argument, AHAB relies primarily on *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702 (Tex. App. 1998) [hereinafter *Reading*]. In *Reading*, the plaintiff obtained a judgment against the defendant in Canada. *Id.* at 705. The plaintiff then "filed a petition in Louisiana to make the Canadian judgment 'executory.'" *Id.* The plaintiff subsequently filed for enforcement of the Louisiana

judgment in Texas under Texas's version of the Enforcement Act, arguing that Texas should give full faith and credit to the Louisiana judgment. **Id.** The plaintiff also filed to have the underlying Canadian judgment recognized in Texas under Texas's version of the Recognition Act. **Id.**

The **Reading** Court, relying on **Tanner v. Hancock**, 5 Kan. App. 2d 558, 619 P.2d 1177 (Kan. Ct. App. 1980), suggested that to permit enforcement of the Louisiana judgment would allow the plaintiff to enforce its Canadian judgment "through the back door." **Reading**, 976 S.W.2d at 715. The **Reading** Court opined that "it is not within the spirit or intent of the [Enforcement Act] to compel a state to recognize and enforce a 'foreign country judgment' on the sole basis that it has been recognized and made executory by a sister state's judgment."[16] **Id.** at 714.

For three reasons, we respectfully disagree with the **Reading** Court's quixotic reliance on **Tanner**.[17] First, **Tanner** did not involve a foreign country judgment. **Tanner** addressed a Kansas judgment that had been filed under Missouri's Enforcement Act. **Tanner**, 5 Kan. App. 2d at 558, 619 P.2d at 1178. The instant case involves a Bahraini judgment. Second, the Court of Appeals of Kansas held that the Missouri judgment would not be

---

[16] The Texas Court of Appeals, however, did hold that the Canadian judgment was entitled to recognition under the Recognition Act. **Reading**, 976 S.W.2d at 712.

[17] Regardless, decisions of our sister states are not binding on this Court. **Albert v. Erie Ins. Exch.**, 65 A.3d 923, 929 (Pa. Super. 2013).

given full faith and credit in Kansas because it appeared that the "sole reason for the entire exercise was to avoid a motion for relief pending in the original lawsuit." **Reading**, 976 S.W.2d at 714 (citing **Tanner**, 5 Kan. App. 2d at 562-63, 619 P.2d at 1181). There is no allegation or evidence in the instant matter that Standard Chartered proceeded with any such improper purpose. Third, Texas has adopted the Uniform Foreign Money Judgments Recognition Act, which differs markedly from Louisiana's common-law based recognition law. **Compare** Tex. Civ. Prac. & Rem. Code. Ann. §§ 36.001-36.008 (West 2013), **with** La. Code Civ. Proc. Ann. art 2541(A) (2014), **and Baker & McKenzie Advokatbyra v. Thinkstream Inc.**, 20 So.3d 1109, 1118 (La. Ct. App. 2009) ("A judgment creditor nevertheless has a remedy to enforce a judgment rendered in a foreign country by filing an ordinary action in accordance with LSA-C.C.P. art. 2541 . . . .").[18]  Instantly, the

---

[18] Article 2541 states in pertinent part:

### Art. 2541. Execution of foreign judgments

A. A party seeking recognition or execution by a Louisiana court of a judgment or decree of a court of the United States or a territory thereof, or of any other state, or of any foreign country may either seek enforcement pursuant to R.S. 13:4241, et seq. [Louisiana's version of the Enforcement Act], or bring an ordinary proceeding against the judgment debtor in the proper Louisiana court, to have the judgment or decree recognized and made the judgment of the Louisiana court.

La. Code Civ. Proc. Ann. art. 2541(A) (2014).

versions of the Recognition Act at issue here—Pennsylvania's and New York's—are materially identical. **Compare** N.Y. C.P.L.R. 5301-09, **with** 42 P.S. §§ 22001-09. Simply stated, in Pennsylvania, judgments recognized as valid after a full hearing in a sister-state are *res judicata*.[19, 20] **Baker**, 522 U.S. at 233-34, 118 S. Ct. at 663-64, 139 L. Ed. 2d at 592-93.; **Wilkes**, 587 Pa. at 607, 902 A.2d at 376.

To the extent that AHAB asks this Court to hold that, in the interest of Pennsylvania public policy, the trial court should be required to subject a New York judgment—undisturbed by New York's appellate court—to heightened scrutiny and conduct an independent inquiry into the validity of

---

[19] We note also that **Reading** is apparently the only case in which a court has refused to adhere to the Full Faith and Credit Clause and denied enforcement of a sister-state judgment recognizing a foreign judgment. **See** Gregory H. Schill, Ending Judgment Arbitrage: Jurisdictional Competition and the Enforcement of Foreign Money Judgments in the United States, 54 Harvard Int'l L. J. 459, 490 & n.157 (2013).

[20] AHAB also cites **Wamsley v. Nodak Mut. Ins. Co.**, 341 Mont. 467, 178 P.3d 102 (Mont. 2008), and **Matusevitch v. Telnikoff**, 877 F. Supp. 1 (D.D.C. 1995), *aff'd*, 159 F.3d 636 (D.C. Cir. May 5, 1998) (*per curiam*), to bolster its argument. These cases, too, are distinguishable from the instant case. First, **Wamsley** did not concern a foreign country money judgment, but rather a North Dakota declaratory judgment. **Wamsley**, 341 Mont. at 481, 178 P.3d at 113. Second, the holding in **Matusevitch** arose from an entirely different procedural posture. The **Matusevitch** court was considering whether the plaintiff was required to seek recognition of a foreign country money judgment pursuant to Maryland's version of the Recognition Act before the judgment could be enforced. **Matusevitch**, 877 F. Supp. at 3. That court was not asked to consider enforcement of a foreign country money judgment that had already been recognized in a sister state.

the New York judgment, AHAB is not entitled to relief. As the trial court opined, there is "no roving 'public policy exception' to the full faith and credit due **judgments**." Trial Ct. Op. at 8 (quoting **Baker**, 522 U.S. at 233, 118 S. Ct. at 664, 139 L. Ed. 2d at 592 (emphasis in original)). States must give full faith and credit to sister-state judgments "even where the judgment violates the policy or law of the forum where enforcement is sought." **See Greate Bay**, 415 Pa. Super. at 414, 609 A.2d at 820. Just as Pennsylvania enforced a gambling debt that violated public policy in Pennsylvania, even if the underlying judgment in this case violated our public policy, we are obliged to enforce it.[21] **See id.**; **accord Baker**, 522 U.S. at 233, 118 S. Ct. at 664, 139 L. Ed. 2d at 592.

For all of the foregoing reasons, having discerned no abuse of discretion or error of law, we affirm the order of the trial court denying AHAB's motion to vacate judgment in favor of Standard Chartered. **See Olympus**, 962 A.2d at 673.

Order affirmed.

---

[21] In this Court's view, the prevailing public policy consideration raised by the instant case is the application of the Full Faith and Credit Clause as a cornerstone of our federal system. **Milwaukee Cnty.**, 296 U.S. at 276-77, 56 S. Ct. at 234, 80 L. Ed. at 228.

J. A13031/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2014