OPINION OF THE COURT
Ellen M. Coin, J.
This is an action brought pursuant to CPLR 5303 to enforce a $25 million judgment entered in the Kingdom of Bahrain. Defendants move to dismiss the complaint pursuant to CPLR 3211 (a) (7). Their motion is based on three contentions. First they argue that the complaint fails to allege the elements required under article 53 of the CPLR. Secondly, they contend that the underlying judgment violated due process. Finally, they contend that Bahrain was an inconvenient forum. In response, plaintiff cross-moves for summary judgment pursuant to CPLR 3212. *833 For the reasons stated below, defendants’ motion is denied and plaintiffs cross motion is granted.
Requisite Elements
On a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must accept the facts alleged in the pleading as true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory. (See Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Leon v Martinez, 84 NY2d 83, 87 [1994].)
The amended complaint alleges that the Bahrain judgment was rendered in favor of plaintiff Standard Chartered Bank, a banking corporation organized under the laws of England and Wales, with a New York branch, against defendants, a Saudi Arabian partnership and its partners (all of whom are citizens and residents of Saudi Arabia) in the amount of $25 million plus interest at the rate of 2% per annum from April 23, 2009, plus costs in the aggregate amount of 35,932 Bahraini dinars. It alleges that the judgment was entered pursuant to the law of the Kingdom of Bahrain, and that it is final, conclusive and enforceable there. It further alleges that no appeal has been taken from the Bahrain judgment and that the time to take such an appeal has expired. Finally, it alleges that the Bahrain judgment remains unsatisfied.
It is undisputed that the Bahrain judgment was rendered in the Bahrain Chamber for Dispute Resolution (BCDR). It is also undisputed that all of the defendants in the instant action appeared before the BCDR through their counsel, who made motions before the Tribunal, participating in the litigation. Further, it is undisputed that defendants did not avail themselves of their right to appeal from the Bahraini judgment.
Defendants argue that the amended complaint fails to meet the pleading standards enunciated in CIBC Mellon Trust Co. v Mora Hotel Corp.:[1] (1) a fined judgment, conclusive and enforceable where rendered; (2) subject matter jurisdiction; (3) jurisdiction over the parties or the res; and (4) regular proceedings conducted under a system that provides impartial tribunals and procedures compatible with due process.
Defendants do not deny that the amended complaint alleges the first requisite element, i.e., that the Bahrain judgment was *834 final, conclusive and enforceable there (amended complaint 1Í 7). However, they contend that plaintiff fails to allege the remaining three elements necessary for enforcement of the foreign judgment.
As plaintiff correctly notes, all of these elements are matters of defense. (CPLR 5304 [a] [1], [2]; [b] [1]; see e.g. Chevron Corp. v Naranjo, 667 F3d 232, 240 [2d Cir 2012]; S.C. Chimexim S.A. v Velco Enters. Ltd., 36 F Supp 2d 206, 211 [SD NY 1999]; Blacklink Transp. Consultants Pty Ltd. v Von Summer, 18 Misc 3d 1113[A], 2008 NY Slip Op 50017[U], *2 [Sup Ct, NY County 2008] [“Under CPLR 5303 a conclusive judgment from a foreign country which meets the requirements of CPLR 5302 is enforceable in New York unless one of the factors set forth by CPLR 5304 applies”].) Indeed, section 5304 lists a total of nine elements (including those defendants cite), any one or more of which may or may not be applicable in a given case (CPLR 5304 [a] [1], [2]; [b] [l]-[7]). Thus, plaintiffs failure to plead defendants’ selected CPLR 5304 elements (subds [a] [1], [2]; [b] [1]) forms no basis for dismissal of the amended complaint.
Fundamental Due Process
Defendants contend that the BCDR proceeding in which the decision was rendered was the functional equivalent of compulsory arbitration, in that the decision makers were not professional judges, evidence was unreasonably curtailed, and rights of appeal were so limited as to be nonexistent. Thus, they claim, the procedures employed by the Bahrain Tribunal were not compatible with due process and require that this court deny recognition of the judgment pursuant to CPLR 5304 (a) (1).
Plaintiff, in opposition and in support of its instant cross motion for summary judgment, contends that the procedures of the Bahrain Tribunal meet the due process requirement of the statute. Plaintiff bears the burden on its cross motion of proving that no mandatory basis for nonrecognition pursuant to CPLR 5304 (a) exists. (Blacklink Transp. Consultants Pty Ltd. v Von Summer, 2008 NY Slip Op 50017[U], *2, citing Dresdner Bank AG v Haque, 161 F Supp 2d 259, 263 [SD NY 2001]).[2]
CPLR 5304 (a) (1) bars recognition of a foreign country judgment if the judgment was rendered under a system which does *835 not provide impartial tribunals or procedures compatible with the requirements of due process of law. However, that section does not demand that the foreign tribunal’s procedures exactly match those of New York. (CIBC Mellon Trust Co., 100 NY2d at 222.) If a defendant is afforded notice and an opportunity to be heard in the underlying litigation, the basic requisites of due process are met. (Society of Lloyd’s v Grace, 278 AD2d 169 [1st Dept 2000].)
According to Standard’s expert, Hassan Ali Radhi, whose law firm represented Standard in the Bahraini action, the BCDR Law was decreed to create procedures for adjudicating significant commercial disputes. Section 1 of chapter 2 of the BCDR Law creates a commercial court (the BCDR Tribunal), while section 2 of chapter 2 of the BCDR Law creates a commercial arbitration institute to administer domestic and international arbitration pursuant to agreement of the parties (aff of Hassan Ali Radhi sworn to Apr. 1, 2012, lili 17, 18).
Defendants do not allege that there was any agreement to arbitrate. Moreover, although their attorney in the Bahrain proceeding submits on this motion a lengthy affidavit describing aspects of the proceedings and the Tribunal’s purported errors, nowhere in her affidavit does she opine that the Bahrain proceeding was in effect an arbitration. In fact, when testifying on behalf of defendant Ahmad Hamad Al Gosaibi and Brothers Company (AHAB) in a federal court action, she stated the opposite: that the BCDR Tribunal in which the proceeding underlying the instant action was held “is not an arbitration tribunal. . . , but a judicial body” (exhibit 3 at 306, annexed to affirmation of Marc J. Gottridge dated Apr. 2, 2012).
Standard’s Bahrain lawyer notes — and defendants do not deny — that the civil justice system in Bahrain is predominantly a civil law system, rather than a common-law system as in England and the United States (Ali Radhi aff 1111). Each BCDR tribunal is composed of three members, two of whom are judges at the High Court of Appeal. The third judge is a non-judge selected from a list prepared by the BCDR, usually with specialized knowledge in an area relevant to the matter (Ali Radhi aff 1f 29; Ali Hassan aff 1i 9). Participation by a lay judge is commonplace in civil law trials. (Daniel Tilley, The Non-Rules of Evidence in the Ad Hoc Tribunals, 45 Inti Law 695, 705 n 99 [summer 2011].)
*836 Defendants’ contentions regarding the lack of due process in the Tribunal proceeding are negated by the judgment it rendered (exhibit A to affirmation of Eric L. Lewis dated Feb. 27, 2012).[3] The facts of the underlying case, arising out of a currency exchange transaction, appear relatively simple. Standard alleged that in April 2009 it agreed to sell Saudi riyals to AHAB at an agreed-upon rate in exchange for $25 million US; that Standard transferred the Saudi riyals into AHAB’s account; and that AHAB failed to transfer the corresponding funds in US dollars into Standard’s account (judgment at 2; exhibit A to Lewis affirmation).
Defendants’ defense was that the transaction was the product of documents forged by Maan Abdulwahid Al Sanea, the son-in-law of decedent Suleiman Ahmed Al Gosaibi (AHAB’s chairman of the board) and brother-in-law of the other individual defendants. In addition to being the relative by marriage of the individual defendants, Al Sanea was the manager of AHAB’s money exchange branch. Defendants alleged that through a series of transfers Al Sanea moved the proceeds of this currency transaction into his own individual accounts (judgment at 4; exhibit A to Lewis affirmation), and that therefore they were not liable to Standard.
Defendants argue that much of the fact-finding at a proceeding before the Tribunal may be done, as was apparently done in this case, by experts appointed by thé Tribunal, permissible under the BCDR Regulating Procedures and in trials in civil law jurisdictions. (Caslav Pejovic, Civil Law and Common Law: Two Different Paths Leading to the Same Goal, 32 Victoria U Wellington L Rev 817, 838 [2001].) However, the expert’s opinion regarding the facts he collects does not restrict the Tribunal (exhibit E to Ali Radhi aff at 74). Significantly, while defendants complain of the expert accountant’s findings, they adopt the findings of the forgery expert whom the Tribunal appointed in response to defendants’ request that the Public Prosecution Office examine and determine whether certain documents were forged (judgment at 5; exhibit A to Lewis affirmation).
Based upon the findings of the forgery expert, the Tribunal accepted defendants’ contention that Al Sanea had forged his *837 father-in-law’s signature to various documents. Nevertheless, the Tribunal found that defendants’ own submissions confirmed Al Sanea’s authority as manager of AHAB’s money exchange branch and that Standard transferred its Saudi riyals into AHAB’s account at the Saudi British Bank. Thus, the Tribunal ruled that the defendants were liable to Standard for the $25 million it was entitled to receive. The Tribunal found, “The underlying reason for [AHAB’s] liability for [Al Sanea’s] acts is the presumed wrongdoing which [AHAB] committed by making a bad choice of its subordinates, by being negligent, and by being remiss as regards supervising its subordinates and examining their behavior.” (Judgment at 10; exhibit A to Lewis affirmation.)
The defendants also claim that the accounting expert erred in concluding, based on the forged documents, that AHAB and Standard had a long-standing commercial relationship. However, since the Tribunal did not base its determination on the parties’ relationship or its duration, this alleged error did not contribute to the Tribunal’s judgment. Similarly irrelevant to the judgment is the issue of the accounting expert’s failure to meet with any AHAB witness, since the Tribunal based its determination in large part on defendants’ own admissions and allegations.
Defendants also find error in the accounting expert’s alleged failure to confirm from Reuters that Ad Sanea’s use of a Reuters account was unauthorized. The means by which the exchange was conducted is immaterial to the Tribunal’s finding that defendants negligently failed to supervise Al Sanea in his transactions, and that AHAB received the proceeds of the currency exchange transaction with Standard.
Similarly, defendants’ claims regarding the Tribunal’s refusal to join Al Sanea as a party or to stay the case pending the outcome of a criminal complaint against him fail to demonstrate the absence of due process. The Tribunal, noting that defendants could have filed a legal action “of first instance” against A1 Sanea (a suggestion of possible laches), determined that their request to bring him into the proceedings would prolong the proceedings and delay its decision (judgment at 8-9; exhibit A to Lewis affirmation). In its refusal to allow defendants to bring A1 Sanea into the case, the Tribunal noted that the request for introduction of a third party into the legal proceedings is a matter of discretion and that a Tribunal has the right to refuse the request whenever its acceptance tends to prolong such period of dispute or to delay its decision (id. at 8). As to defendants’ request to delay the Tribunal’s proceedings pending disposition *838 of the criminal matter, the Tribunal ruled that since the disposition of the criminal complaint was not necessary to its determination, it would reaffirm its prior determination to deny that request (id.).
Finally, defendants contend that as they were barred from leaving Saudi Arabia, they could not appear to testify before the Tribunal, and that there is no BCDR procedure for testimony by means of videoconference. As Standard notes, nothing in the rules of the Tribunal prevented testimony by such means and defendants do not allege that they requested to appear via videoconference. Moreover, even assuming, arguendo, that defendants had been permitted to testify by videoconference, they fail to allege that they would have presented to the Tribunal any evidence that differed from the unsuccessful arguments offered by their counsel before the Tribunal, i.e., that Al Sanea’s currency exchange transaction with Standard was unauthorized and was based upon forged documents, and that he siphoned off the proceeds of the exchange.
Standard contends, and defendants do not claim otherwise, that the appellate procedure in Bahrain for appeals from BCDR proceedings is more streamlined than for appeals from ordinary judgments. Thus, it merely eliminates the step of appeal to an intermediate appellate court, thereby permitting the appellant to proceed directly to the Court of Cassation. Defendants fail to demonstrate that elimination of this intermediate stage of appeal deprived them of a meaningful right to appeal. Moreover, as Standard argues, defendants could have appealed from the Tribunal’s judgment on all or any of their claims of error under the first of the eight permissible grounds for appeal, that they “were not enabled to present [their] defense.” This they concededly failed to do.
Furthermore, to the extent that the grounds for appeal of the BCDR judgment are more limited than those in cases before Bahrain’s Court of Appeal, due process is not offended in this case. Due process does not require appellate review, where, as here, the party has received the opportunity to be heard.[4] (Matter of Keeffe v Tax Appeals Trib. of State of N.Y., 216 AD2d 692, 694 [3d Dept 1995]; Gerzof v Gulotta, 87 Misc 2d 768, 778 [Sup Ct, Nassau County 1976]; Perry v AAMCO Transmissions, 126 Misc 2d 454 [Rochester City Ct 1984].)
*839 The judgment of the Tribunal reveals that defendants, through their counsel in that proceeding, fully presented their arguments and positions. Defendants do not deny that they had notice of the proceeding, and the record reflects that they were afforded ample opportunity to be heard. Their dissatisfaction fails to bar enforcement of the Bahrain judgment in this court. Forum Non Conveniens
Defendants, citing CPLR 5304 (b) (7), contend that the Kingdom of Bahrain was an inconvenient forum for them. Defendants have the burden of proving a discretionary basis for nonrecognition. (Byblos Bank Europe, S.A. v Sekerbank Turk Anonym Syrketi, 40 AD3d 497, 499 [1st Dept 2007].)
CPLR 5304 (b) (7) permits a court to deny recognition of a foreign country judgment if “in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.” This subdivision applies only if the court’s jurisdiction rested solely on local service of process on the judgment debtor, i.e., where there was no other jurisdictional nexus to which the foreign tribunal could lay claim in the case. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5304:l at 551.)
Standard has established that defendants were served with process in Saudi Arabia, not in Bahrain (Ali Radhi aff 1i 48), and defendants fail to rebut this claim. Thus, it appears that CPLR 5304 (b) (7) is inapplicable here, since jurisdiction was not based only on personal service.
Moreover, even were the statute applicable where, as here, defendants were served not in the forum but in the state in which they reside, there was yet another basis for jurisdiction in this case: defendants’ voluntary appearance in the Bahrain BCDR proceeding. (CPLR 5305 [a] [2].) Defendants fail to allege that their appearance before the BCDR was limited to contesting jurisdiction or to seeking to protect property seized or threatened with seizure in the proceedings, circumstances which would preclude jurisdiction under CPLR 5305 (a) (2). In the absence of proof that jurisdiction in Bahrain was based only on personal service, defendants cannot invoke CPLR 5304 (b) (7) to prevent enforcement of the BCDR judgment on the ground of forum non conveniens.
In light of the foregoing, it is hereby ordered that the motion to dismiss the complaint is hereby denied, and it is further ordered that the cross motion for summary judgment is granted, *840 and the clerk is directed to enter judgment in favor of plaintiff and against defendant in the amount of $25,000,000, with interest thereon at the rate of 2% per annum from April 23, 2009 until the date of this order, and thereafter at the statutory rate, as calculated by the clerk, and in the sum of 35,932 Bahraini dinars with interest thereon at the statutory rate, as calculated by the clerk, together with costs and disbursements to be taxed by the clerk upon submission of an appropriate bill of costs.

. 296 AD2d 81, 97 (1st Dept 2002), affd 100 NY2d 215 (2003), cert denied 540 US 948 (2003).

. Defendants limit their argument on subdivision (a) of CPLR 5304 to paragraph (1). They do not contend that the Bahrain court lacked personal jurisdiction over them (CPLR 5304 [a] [2]). At any rate, they would be foreclosed from doing so, given their apparently voluntary — and lengthy — participation, through their counsel, in the Bahrain BCDR proceedings. (CPLR 5305 [a] [2]; *835 CIBC Mellon Trust Co. v Mora Hotel Corp., 100 NY2d at 223; S.C. Chimexim S.A. v Velco Enters. Ltd,., 36 F Supp 2d at 215.)

. While “microscopic analysis of the underlying proceeding” is not required in conducting the analysis under CPLR 5304 (a) (1) (Sung Hwan Co., Ltd. v Rite Aid Corp., 7 NY3d 78, 83 [2006]), the BCDR judgment itself rebuts most, if not all, of defendants’ present contentions of lack of due process in the proceedings.

. Defendants seek to invoke the rule enunciated in Mount St. Mary’s Hosp. of Niagara Falls v Catherwood (26 NY2d 493 [1970]), applicable in the context of compulsory arbitration. Defendants have utterly failed to establish that the Bahrain proceeding was such an arbitration.