*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 13-CV-660 and 13-CV-1415

AHMAD HAMAD AL GOSAIBI & BROTHERS COMPANY, *et al.,* APPELLANTS,

V.

STANDARD CHARTERED BANK, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAF-1602-13)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued April 10, 2014                    Decided September 4, 2014)

*Mark J. Leimkuhler*, with whom *Eric L. Lewis* and *A. Katherine Toomey* were on the brief, for appellants.

*Christopher T. Handman*, with whom *Edward C. Dolan*, *Khang V. Tran*, and *Marc J. Gottridge* were on the brief, for appellee.

Before FISHER and EASTERLY, *Associate Judges*, and REID, *Senior Judge*.

FISHER, *Associate Judge*:   The Constitution of the United States and 28 U.S.C. § 1738 (2012) require states of the Union to give full faith and credit to judgments rendered by other states.  By contrast, judgments rendered in foreign countries are not entitled to full faith and credit, but they may be recognized by individual states as a matter of comity.  The question presented in this case, an

issue of first impression for us, is whether a New York judgment that simply recognized a judgment issued in Bahrain is entitled to full faith and credit in the District of Columbia. We hold that it is not.

## I. Background

### A. The Legal Context

Recognition of domestic judgments is governed by Article IV, Section 1, of the United States Constitution, which provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Exercising its power pursuant to this clause, Congress enacted 28 U.S.C. § 1738, which states that the acts, records, and judicial proceedings "of any State, Territory, or Possession of the United States . . . shall have the same full faith and

credit in every court within the United States . . . as they have by law or usage in the courts . . . from which they are taken."[1]

Applying these provisions, the Supreme Court long ago recognized that, as a general matter, "the judgments of each State [have] the same conclusive effect . . . in all the States, as they ha[ve] at home." *Thompson v. Whitman*, 85 U.S. 457, 462 (1873).  Put differently, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land."  *Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998).  "This rule, if not compelled by the Full Faith and Credit Clause itself, . . . is surely required by 28 U.S.C. § 1738 . . . ."  *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 270 (1980) (plurality opinion).[2]

---

[1] The first Congress adopted the original version of this statute in 1790.  *See* Law of May 26, 1790, ch. 11, 1 Stat. 122.  The statute, as it pertains to this case, is substantively the same today as it was then.  28 U.S.C. § 1738 (2012).

[2] Some scholars have suggested that the framers of the Constitution did not intend for the Full Faith and Credit Clause to be self-executing.  *See* David E. Engdahl, *The Classic Rule of Faith and Credit*, 118 Yale L.J. 1584, 1588 (2009) (arguing that the first sentence of the clause was meant to state only "a constitutional principle of evidence, while the . . . federal statute dating from 1790 . . . constitutes a congressional prescription of sister-state effect"); *see also* Ralph U. Whitten, *The Original Understanding of the Full Faith and Credit Clause and the Defense of Marriage Act*, 32 Creighton L. Rev. 255, 257 (1998)

(continued…)

Importantly, however, "recognition of judicial decrees of foreign countries is based upon [principles of] comity and not . . . upon full faith and credit under the Federal Constitution." *Butler v. Butler*, 239 A.2d 616, 618 (D.C. 1968); *see Hilton v. Guyot*, 159 U.S. 113, 227 (1895) (concluding "that judgments rendered in France, or in any other foreign country, . . . are not entitled to full credit and conclusive effect when sued upon in this country"). "Comity, in the legal sense, is [not] a matter of absolute obligation . . . . [I]t is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation . . . ." *Hilton*, 159 U.S. at 163-64. "[I]n the absence of a federal statute or treaty . . . , recognition and enforcement of foreign country judgments is a matter of State law." Restatement (Third) of Foreign Relations Law § 481 cmt. a (1987) (citing *Erie v. Tompkins*, 304 U.S. 64 (1938)).

---

(…continued)
(concluding "that the first sentence of the Clause was originally understood as a narrow evidentiary command"). This point need not concern us, since our obligation to recognize domestic judgments has been characterized by the Supreme Court as a constitutional command. *See, e.g.*, *Baker*, 522 U.S. at 232 (quoting *Estin v. Estin*, 334 U.S. 541, 546 (1948)) ("[T]he Full Faith and Credit Clause 'substituted a command for the earlier principles of comity and thus basically altered the status of the States as independent sovereigns.'").

As a matter of "state" law, the District of Columbia has adopted two separate statutory schemes to govern the recognition of domestic judgments and foreign country judgments. The Uniform Enforcement of Foreign Judgments Act ("UEFJA") provides for the streamlined registration of "any judgment . . . that is entitled to full faith and credit." D.C. Code §§ 15-351 to -357 (2012 Repl.). The Act makes the District's recognition of such judgments essentially automatic, as they may be registered "in the Office of the Clerk of the Superior Court" without the involvement of a judge and without prior notice to other interested parties. D.C. Code §§ 15-352 to -353 (2012 Repl.). Once filed with the Clerk, that judgment "shall have the same effect and be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court and may be enforced or satisfied in the same manner." D.C. Code § 15-352 (2012 Repl.).

The UEFJA does not apply to judgments rendered in a foreign country, which "are not entitled to full credit and conclusive effect when sued upon in this country." *Hilton*, 159 U.S. at 227. *See, e.g.*, *Van Kooten Holding B.V. v. Dumarco Corp.*, 670 F. Supp. 227, 228 (N.D. Ill. 1987) (holding "that the judgments of foreign countries can *not* be registered for enforcement under" the UEFJA);

*Multibanco Comermex, S.A. v. Gonzales H.*, 630 P.2d 1053, 1053 (Ariz. Ct. App. 1981) (same).

In contrast to the UEFJA, the Uniform Foreign-Country Money Judgments Recognition Act ("UFCMJRA") requires a litigant seeking recognition of a foreign country judgment to raise the issue in a new or pending action before the Superior Court. *See* D.C. Code §§ 15-361 to -371 (2012 Repl.). A judge then substantively reviews the foreign country judgment. *See* D.C. Code § 15-364 (2012 Repl.). Under the UFCMJRA, "[a] court of the District of Columbia may not recognize a foreign-country judgment if" it was rendered under any one of three enumerated circumstances. D.C. Code § 15-364 (b) (2012 Repl.). Additionally, the statute enumerates eight conditions under which "the District of Columbia need not recognize a foreign-country judgment." D.C. Code § 15-364 (c) (2012 Repl.).

The UEFJA and the UFCMJRA were both modeled on uniform acts, and many of the states have adopted similar statutes. However, there are significant differences between the District's provisions and their analogues in some states. The example most pertinent to this case is the New York statute governing recognition of foreign country judgments. N.Y. C.P.L.R. § 5304 (2012). That statute provides New York courts with fewer grounds to withhold recognition of a

foreign country judgment than are available to courts in the District of Columbia. *Compare id. with* D.C. Code § 15-364 (2012 Repl.). With this context in mind, we now turn to the facts of this case.

## B. The Factual and Procedural Background

Appellants—Ahmad Hamad Al Gosaibi and Brothers Company and nineteen of its individual partners (collectively "AHAB")—are debtors on a foreign country money judgment for $25 million plus interest and certain costs. That judgment, which is owed to appellee Standard Chartered Bank ("SCB"), was entered by a tribunal in the Kingdom of Bahrain.[3] The underlying dispute involved a foreign exchange transaction.

---

[3] The tribunal that entered judgment was the Bahrain Chamber for Dispute Resolution, which SCB describes as "a court" and which AHAB characterizes as "a center for binding alternative dispute resolution." The record contains little information regarding the precise nature of the tribunal or the process it affords litigants, points which are not relevant to this appeal. Nevertheless, it appears that the tribunal was established under the laws of Bahrain "to create procedures for adjudicating significant commercial disputes." *Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 957 N.Y.S.2d 602, 605 (N.Y. Sup. Ct. 2012). In each case it considers, the tribunal "is composed of three members, two of whom are judges . . . . The third [member] is a non-judge . . . , usually with specialized knowledge in an area relevant to the matter." *Id.* Moreover, "much of the fact-finding at a proceeding before the Tribunal may be done, as was apparently done in this case, by experts appointed by the Tribunal." *Id.* at 606.

SCB sought recognition of the Bahraini judgment in New York state court pursuant to New York's version of the Uniform Foreign Money-Judgments Recognition Act, which is a predecessor to the UFCMJRA. *See* N.Y. C.P.L.R. §§ 5301-5309 (2012). In December 2012 the New York trial court issued a decision recognizing the Bahraini judgment; the next month, it entered a judgment to that effect. *See Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 957 N.Y.S.2d 602, 603, 608 (N.Y. Sup. Ct. 2012). At that time, the court did not address the issue of whether it had personal jurisdiction over AHAB, since "a party seeking recognition in New York of a foreign money judgment (whether of a sister state or a foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts." *Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 289 (N.Y. App. Div. 2001). AHAB unsuccessfully appealed the New York judgment. *See Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, 973 N.Y.S.2d 197 (N.Y. App. Div. 2013).

Shortly after the New York trial court entered its judgment, SCB registered that judgment in the Superior Court of the District of Columbia pursuant to the UEFJA. In the document SCB filed to request this registration, it did not alert the Superior Court to the fact that the New York judgment was based on a foreign-

country judgment, nor did it attach a copy of the Bahraini judgment. However, it did attach the New York judgment, which states that SCB's complaint sought "recognition of a foreign country money judgment."

Notably, SCB made no attempt in the District of Columbia to seek recognition of the Bahraini judgment under the UFCMJRA. Moreover, AHAB did not learn of SCB's filing in the District until after the Superior Court had already registered the New York judgment. At that point, AHAB moved to set aside the registration under Superior Court Civil Rule 60 (b).[4] AHAB argued that the New York judgment was not entitled to full faith and credit and that SCB had impermissibly tried to register a foreign country judgment through the UEFJA. The trial court denied the 60 (b) motion, concluding that SCB was "entitled to enforce . . . the judgment that it obtained in New York under New York law, even if it would not be entitled to enforce the Bahraini award or judgment under the District's version of the UFCMJRA." AHAB noted an appeal to this court.

---

[4] In *Threatt v. Winston*, we noted that "many jurisdictions implement their version of [the UEFJA] by holding that the proper way to attack a foreign judgment is by filing in the receiving jurisdiction a motion or independent action under Rule 60 (or the local equivalent)." 907 A.2d 780, 788 (D.C. 2006). AHAB maintains that a Rule 60 (b) motion was the proper vehicle for its claims in this case, and SCB does not contend otherwise.

Subsequently, the New York trial court entered an order granting AHAB's motion to quash certain subpoenas that SCB had issued in proceedings to enforce the New York judgment. The motion to quash gave the court occasion to consider whether it had personal jurisdiction over AHAB, and the court ruled that it did not. Relying on this ruling, AHAB filed with the D.C. Superior Court a renewed 60 (b) motion to vacate registration of the New York judgment. In its motion, AHAB argued that full faith and credit is not owed to a judgment entered without jurisdiction. AHAB requested "a statement that, if the case is remanded from the District of Columbia Court of Appeals, [the Superior Court] will . . . vacate or set aside the registration of [SCB's] New York Judgment."

The Superior Court declined this request and instead issued an indicative ruling opining that AHAB had waived its jurisdictional argument by failing to raise it in the initial Rule 60 (b) motion. The Superior Court also observed that AHAB's claim, even if it had been timely made, was not clearly supported by any of the case law AHAB had cited. Accordingly, the court stated that if it "had jurisdiction to do so, it would deny AHAB's Rule 60(b) motion to vacate registration of the New York judgment." From this indicative ruling, AHAB noted its second appeal.

## II. Legal Analysis

The parties agree that the Bahraini judgment itself is not entitled to full faith and credit, but the agreement ends there. On the question of domestic court recognition of its foreign country judgment, SCB essentially argues that we must allow New York to speak for the entire country. AHAB claims, on the other hand, that because the New York judgment did nothing more than recognize the Bahraini judgment, SCB should not have been allowed to register it through the UEFJA. And because the UEFJA applies solely to "any judgment . . . that is entitled to full faith and credit," D.C. Code § 15-351, the central question before us is whether the New York judgment is so entitled. The trial court's order denying AHAB's 60 (b) motion turned completely on this same question. It is a pure question of law, and we therefore review the trial court's order *de novo*. *See Jones v. Hersh*, 845 A.2d 541, 545 (D.C. 2004) (reviewing *de novo* a question of law raised in a 60 (b) motion).

## A. Relevant Precedent

AHAB and SCB recently litigated the same issue presented here before an intermediate state appellate court in Pennsylvania. *See Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.*, __ A.3d __, 2014 WL 4088799, at *1

(Pa. Super. Ct. Aug. 20, 2014). SCB had successfully registered the New York judgment in Pennsylvania pursuant to Pennsylvania's version of the UEFJA, and AHAB appealed the trial court's denial of its motion to vacate registration of that judgment. *Id.* The Pennsylvania appellate court affirmed, holding that the New York judgment is entitled to full faith and credit. *Id.* That decision, which is not binding on this court, does not address the considerations we discuss below and that we ultimately conclude are central to the disposition of this case.

Aside from the recent Pennsylvania decision, we are aware of only two cases in the country that have addressed a question similar to the one now before us. Those cases appear to reach contrary conclusions, and—like the Pennsylvania decision—neither is binding on us. In *Jaffe v. Accredited Sur. & Cas. Co.*, the United States District Court for the Eastern District of Virginia declined to recognize a Canadian judgment because a Florida court had already refused to do so. 294 F.3d 584, 589-90 (4th Cir. 2002). On appeal, the Fourth Circuit acknowledged that "[n]either the full faith and credit statute, nor the Full Faith and Credit Clause of the Constitution, applies to judgments issued from foreign countries." *Id.* at 591. However, the court held that the Florida judgment denying recognition was entitled to full faith and credit, and it concluded that the District Court was therefore precluded from recognizing the Canadian judgment. *Id.* at

590-93. In its analysis, the Fourth Circuit considered "whether Congress ha[d] created a statutory exception to § 1738" that would allow for relitigation of issues decided by the Florida judgment. *Id.* at 592. The court did not consider the main exception to full faith and credit that the Supreme Court has specifically recognized, which we discuss below.

In a second case even more analogous to ours, a Texas appellate court held that principles of full faith and credit did not require it to recognize a Louisiana judgment that did nothing more than recognize a Canadian judgment. *Reading & Bates Constr. Co. v. Baker Energy Res. Corp.*, 976 S.W.2d 702, 712-15 (Tex. App. 1998). The trial court had declined to recognize the Canadian judgment under the Texas version of the UFCMJRA, and the appellate court explained that it would "not permit a party to clothe a foreign country judgment in the garment of a sister state's judgment and thereby evade the . . . [Texas] recognition process." *Id.* at 715. According to the court, the party seeking recognition of the Louisiana judgment was trying "to enforce its Canadian judgment through the back door." *Id.* (internal quotation marks omitted).

## B. The Issue of Jurisdiction

None of the three cases noted above addresses an issue that is of critical importance here. The Supreme Court has made clear that "the full faith and credit clause is not an inexorable and unqualified command." *Pink v. A.A.A. Highway Express, Inc.*, 314 U.S. 201, 210 (1941). Instead,

> the structure of our Nation as a union of States, each possessing equal sovereign powers, dictates some basic limitations on the full-faith-and-credit principles enumerated above. Chief among these limitations is the caveat, consistently recognized . . . , that a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment. Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given.

*Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704-05 (1982) (quoting *Durfee v. Duke*, 375 U.S. 106, 110 (1963)) (footnote, citation, and internal quotation marks omitted); *see also Thompson*, 85 U.S. at 469 (holding, as a matter of first impression, that "the jurisdiction of the court by which a judgment is rendered in any State may be questioned in a collateral proceeding in another State, notwithstanding the provision of the fourth article of the Constitution and the law of 1790"); *Nader v.*

*Serody*, 43 A.3d 327, 334 (D.C. 2012) (quoting *Underwriters Nat'l Assurance Co.*); *Frank E. Basil, Inc. v. Guardino*, 424 A.2d 70, 72, 78 (D.C. 1980) (holding that a California judgment was not entitled to full faith and credit because the court that rendered it lacked personal jurisdiction over the defendant).

SCB argues that the jurisdictional exception to full faith and credit cannot apply where personal jurisdiction is not a necessary predicate to rendering the judgment at issue, as was the case here under New York law. We certainly acknowledge that the New York judgment is enforceable in New York. However, analyzing the underpinnings of the jurisdictional exception to full faith and credit reveals basic principles that will help us determine whether that judgment is enforceable in the District of Columbia as well.

Generally, "to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In large part, the concept of "fair play and substantial justice" is informed by the connection between the forum and the

underlying dispute—in other words, "the forum State's interest in adjudicating the dispute." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

These fundamental principles help explain why judgments entered without jurisdiction are not entitled to full faith and credit. Such a judgment is necessarily rendered by a state with limited (or no) interest in the matter being adjudicated, since personal jurisdiction is a function of the state's relationship to both the parties *and* to their dispute. These same principles guide us in determining whether the New York judgment in this case is entitled to full faith and credit. As previously noted, the New York trial court has ruled that it actually lacks personal jurisdiction over AHAB. SCB contends that we cannot consider that ruling, since AHAB's initial 60 (b) motion in Superior Court did not challenge New York's jurisdiction. Regardless of whether SCB is correct about this waiver argument, the jurisdictional issue we confront is systemic in nature rather than merely specific to this case. Put simply, our task is to determine whether full faith and credit attaches to a class of money judgments that—as a categorical matter—need not be based on the rendering court's personal jurisdiction over the parties. *See Lenchyshyn*, 723 N.Y.S.2d at 289.

At its most basic level, the concept of full faith and credit acknowledges that each state has a strong interest in having its judgments enforced, and honoring those interests "promotes unification" of the country. *Johnson v. Muelberger*, 340 U.S. 581, 585 (1951); *see also* The Federalist No. 42 (James Madison) (Clinton Rossiter ed., 1961) (characterizing the clause as a provision "for the harmony and proper intercourse among the States"). "The animating purpose of the full faith and credit command," *Baker*, 522 U.S. at 232, was "to help weld the independent states into a nation by giving judgments within the jurisdiction of the rendering state the same faith and credit in sister states as they have in the state of the original forum." *Johnson*, 340 U.S. at 584.

However, when a state does nothing more than recognize a foreign country judgment, it lacks the type of interest that drives full faith and credit jurisprudence. The instant appeal presents a case in point. At bottom, AHAB and SCB dispute whether a Bahraini money judgment is enforceable in the District of Columbia. It seems to us that the District's interest in this question clearly outweighs whatever interest New York may have. Consequently, "harmony and proper intercourse among the States" will not be compromised if the District chooses to take a fresh look at the Bahraini judgment. In other words, withholding recognition of the New York judgment will not frustrate the purposes of the Full Faith and Credit Clause.

Requiring such recognition would, on the other hand, have troubling policy implications. AHAB rightly points out that if the New York judgment is entitled to full faith and credit, litigants may obtain recognition of foreign country judgments in *any* U.S. jurisdiction and then enforce those judgments throughout the country. Such litigants would be free to seek recognition in whichever state offers the most lax standards, with no federal requirement that the state of choice be able to establish jurisdiction over the parties.

SCB does not deny that its position, if adopted, would facilitate this type of forum shopping. Instead, it invokes the Supreme Court's precedent in *Williams v. North Carolina*, characterizing that prospect as "part of the price of our federal system." 317 U.S. 287, 302 (1942). This argument assumes its conclusion, since the very question presented here is whether recognition of the type of judgment rendered by New York is, in fact, "part of the price of our federal system."

Moreover, there is a crucial difference between this case and *Williams*. In *Williams*, the Supreme Court held that two Nevada divorce decrees were entitled to full faith and credit in North Carolina because Nevada's jurisdiction to enter those decrees was not in question on appeal. *Id.* at 292-93, 300. In a later case involving

the same parties and arising out of the same set of facts, North Carolina found that Nevada had actually lacked jurisdiction, and the Supreme Court therefore concluded that the decrees were *not* entitled to full faith and credit. *See Williams v. North Carolina*, 325 U.S. 226, 227, 237 (1945). Both *Williams I* and *Williams II* therefore stand for the unremarkable proposition that a judgment entered without jurisdiction is not entitled to full faith and credit.

SCB cites *Williams I* for another proposition—that full faith and credit sometimes results in "one state's policy of strict control" being "thwarted by the decree of a more lax state." 317 U.S. at 302. This undoubtedly happens. Still, as shown in *Williams II,* the "lax state" must have jurisdiction to enter judgment in the first instance. Consequently, the *Williams* cases do not satisfactorily answer the concern AHAB raises with respect to forum shopping. Here, where a court's power to recognize a foreign country judgment is unmoored from any jurisdictional requirement, one state's lax standards could thwart another state's "policy of strict control" *in every instance*.

The problem is not purely hypothetical—it is manifest in the facts of this case. SCB obtained recognition of the Bahraini judgment in New York, where there are fewer statutory grounds for withholding recognition than are available in

the District of Columbia under the UFCMJRA.  We need not determine whether the Bahraini judgment is entitled to recognition under the standards set forth in District of Columbia law; indeed, such a determination would be premature. However, recognition policies particular to the District may be frustrated if full faith and credit attaches to the New York judgment, which—as a matter of law— did not need to be, and in fact was not, predicated on personal jurisdiction.  Taken to its logical conclusion, SCB's argument would favor the application of full faith and credit even if (as is possible) a state chose to give *automatic* recognition to foreign country judgments while having no jurisdiction over the judgment-debtors.

## C.  The Nature of the New York Judgment

Perhaps a simpler route to the same conclusion is to focus on the nature of the New York judgment.  SCB insists that "a judgment is a judgment is a judgment."  But nothing we have found in Supreme Court jurisprudence forbids us to look behind the judgment issued by New York and appreciate that it is a fundamentally different kind of judgment than those given full faith and credit in past cases.  Indeed, aside from the recent Pennsylvania decision (which involved the same parties and the same question now before us), we know of only one other case in which a litigant has sought recognition of a state court judgment that itself

merely recognizes a foreign country judgment. In *Reading & Bates*, a Texas court did "not permit a party to clothe a foreign country judgment in the garment of a sister state's judgment and thereby evade the . . . [Texas] recognition process." 976 S.W.2d at 715. The dearth of precedent on this subject demonstrates, at the very least, that the argument made by SCB is not founded on a well-established understanding of the Full Faith and Credit Clause.

In this case, New York did not resolve a dispute on the merits by exercising authority derived from jurisdiction over the parties and the subject matter. Instead, it recognized the Bahraini judgment as a matter of comity according to standards it had adopted as a matter of state law. Consequently, it is not clear what (if anything) New York stands to gain by having its judgment recognized here. The District of Columbia, however, may lose the right to decide for itself whether to enforce a Bahraini judgment. We would show no disrespect to the courts of New York, nor would we defy any constitutional limits on our own authority, were we to conclude that the recognition judgment issued by New York may not be registered here under the UEFJA.

We acknowledge that, if the type of judgment rendered in New York is not entitled to full faith and credit, litigants will need to obtain recognition of foreign

country judgments in each U.S. jurisdiction where they seek to enforce them. We likewise acknowledge that international comity may well be served by a policy that favors uniform enforcement of foreign country judgments across all of the nation's jurisdictions. However, we view this policy consideration as a matter to be addressed, if at all, by federal statute or international treaty. Regardless of whether uniform enforcement of foreign country judgments would serve the national interest, it simply is not required by the Constitution's Full Faith and Credit Clause.

In reality, the judgment at issue here is a foreign country judgment. The merits of the dispute and the amount of the judgment were resolved in the Kingdom of Bahrain. "[I]n the absence of a federal statute or treaty . . ., recognition and enforcement of foreign country judgments is a matter of State law." Restatement (Third) of Foreign Relations Law § 481 cmt. a (1987). As a matter of District of Columbia law, a foreign country money judgment must be presented for recognition under D.C. Code §§ 15-361 to -371 (2012 Repl.), the Uniform Foreign-Country Money Judgments Recognition Act. The constitutional command to give full faith and credit does not apply in these circumstances, and it therefore does not override the policy decisions embodied in these local statutes.

## III. Holding and Conclusion

For these independently sufficient reasons—New York's lack of a jurisdictional requirement for recognition actions and the essential nature of its judgment—we hold that the New York recognition judgment is not entitled to full faith and credit and therefore does not fit within the scope of the UEFJA. Accordingly, we reverse the order denying AHAB's initial Rule 60 (b) motion and remand this case with instructions to set aside the registration of the New York judgment.[5] Our holding of course does not preclude SCB from seeking recognition of the Bahraini judgment in the District of Columbia pursuant to the UFCMJRA.

*It is so ordered.*

---

[5] The Superior Court did not have jurisdiction over the case when it issued its indicative ruling, but we need not decide whether we have jurisdiction over AHAB's second appeal. The only relief AHAB seeks in its second appeal is for this court to remand "with directions that the original motion to vacate . . . be granted." Since we have done that in disposing of the first appeal, we need not consider the second.